**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN ACORD, KENNETH ACORD, | § | |
| and MARCELLA ORTEGA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-11-3591 |
| | § | |
| YOUNG AGAIN PRODUCTS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION ON DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

On November 27, 2012, United States District Judge Lee H. Rosenthal referred the pending motion for partial summary judgment for a report and recommendation. (Docket Entry #34). This case arises out of the seizure of property which was intended to satisfy, in part, a default judgment in the amount of $3,832,832.40. That judgment was entered against John Acord and Marcella Ortega, by the district court in Maryland, and it was registered in this jurisdiction in 2009. (Plaintiff's Original Complaint ["Complaint"], Docket Entry #1, Exhibit ["Ex."] 1, at 2). On May 29, 2012, Defendants Young Again Products, Inc. ("YAP"), Ivey Mason, and Roger Mason (collectively, "Defendants") filed this motion for partial summary judgment. (Defendants' Motion for Partial Summary Judgment ["Motion"], Docket Entry #25). Plaintiffs John Acord, Marcella Ortega, and Kenneth Acord have responded in opposition to the motion, and Defendants have replied. (Plaintiffs, John Acord, Marcella Ortega, and Ken Acord's Response and Answer to Defendants' Motion for Partial Summary Judgment ["Response"], Docket Entry #32; Defendants' Reply in Support of Motion for Partial Summary Judgment ["Reply"], Docket Entry #33). Having

reviewed the pleadings, the evidence, and the applicable law, it is RECOMMENDED that Defendants' motion for partial summary judgment be GRANTED.

**Background**

Young Again Products is a Maryland corporation which sells health-related goods on the Internet. *See Young Again Prods., Inc. v. Acord*, 307 F. Supp. 2d 713, 714-15 (D. Md. 2004); *see also Young Again Prods., Inc. v. Acord*, 459 Fed. Appx. 294, 295 n.2 (4th Cir. 2011) (detailing the information relevant to this lawsuit). In 1998, John Acord, as the manager of an Internet health-products retailer called "Young Again Nutrition,"[1] entered into an agreement with Young Again Products to purchase and resell YAP merchandise and to post its electronic book ("e-book"), *The Natural Prostate Cure*, on his website. *See Young Again Prods., Inc.*, 307 F. Supp. 2d at 715 & n.3. Under the Agreement, YAP sold designated products to John Acord, who would, in turn, "utilize his marketing and distribution resources to resell the [p]roducts." *Id.* By 2003, however, John Acord was no longer making the required payments to YAP. *See id.* He continued, however, "to engage in the sale and distribution of the [p]roducts," and to post YAP's e-book on his website. *See id.* As a result, in August 2003, YAP brought a lawsuit in a Maryland federal court against Acord and Young Again Nutrition, alleging trademark and copyright infringement, breach of contract, and other state law claims. *See id.*; *Young Again Prods., Inc.*, 459 Fed. Appx. at 295. YAP subsequently amended its complaint to add Marcella Ortega, John Acord's mother, as a defendant. *See id.* Ultimately, in March 2009, after protracted litigation, the district court in Maryland found that

---

[1] At some point during the litigation, Young Again Nutrition became "Supplement Spot LLC." *See Ortega v. Young Again Prods., Inc.*, 2012 WL 3046116, at *1 (S.D. Tex. July 25, 2012) (Ellison, J.).

"Acord and Ortega had failed to participate meaningfully in the litigation," and it entered a default judgment against them, in the amount of $3,832,832.40.  *Id.*

John Acord and Marcella Ortega appealed that judgment to the United States Court of Appeals for the Fourth Circuit.[2]  *See id.* at 304.  But they neglected to post a *supersedeas* bond. (Motion at 4).  For that reason, on June 10, 2009, YAP filed a motion, under 28 U.S.C. § 1963, to register the default judgment in the United States District Court for the Southern District of Texas. *See Young Again Prods., Inc. v. Acord*, Civil No. H-09-mc-00282, at Docket Entry #1, Ex. 2 (S.D. Tex. June 14, 2009) (Rosenthal, J.).  On June 12, 2009, the court in Maryland granted that motion, and the judgment was registered in this jurisdiction.  *See id.* at Docket Entries #1, #2.

The present case involves three different seizures of property arising from Defendants' post-judgment collection efforts.  (Complaint at 5-12; Motion at 1, 5-9).  To provide context for the present motion, it is helpful to detail each seizure individually.

*The First Seizure*

The "first seizure" actually resulted from two writs of execution, each entered on August 21, 2009, by the Clerk of Court for the Southern District of Texas, and executed by the United States Marshals on August 29, 2009.  (Motion at 6, 11 & Ex. 9).  In those writs, the Marshals were commanded to do the following:

> take of the goods, land and choses-in-action of [John Acord and Marcella Ortega] enough to pay the judgment in full and the costs of this writ.

---

[2] On December 23, 2011, the Fourth Circuit affirmed the default judgment, and it issued its mandate on February 22, 2012.  *See Young Again Prods., Inc.*, 459 Fed. Appx. at 304.  (*See* Motion at Ex. 3).  The defendants then filed a petition for a writ of *certiorari*, but it was denied by the United States Supreme Court.  *See Acord v. Young Again Prods., Inc.*, 133 S. Ct. 140 (Oct. 1, 2012).

*See Young Again Prods., Inc.*, Civil No. H-09-mc-00282, at Docket Entry #3, #4.  On August 29, 2009, the United States Marshals carried out those orders by levying execution on residential property located at 1919 and 1935 Cattle Drive in Magnolia, Texas.  (Motion at 6, 11 & Ex. 9). Personal property was seized from both addresses.  (*Id*. at 6).

At the time the writs were executed, John Acord, his mother, Marcella Ortega, and his brother, Kenneth Acord resided at 1919 Cattle Drive.  (Complaint at 22; *see* Motion at 6; Converting and Authenticating Affidavit of Joe Alfred Izen, Jr. in Opposition to Defendants' Motion for Partial Summary Judgment ["Response Evidence"], Docket Entry #31, at 1-2 & Ex. 8).  Bank statements and personal checks also list 1935 Cattle Drive as an alternative address for John Acord and Marcella Ortega.  (Motion at Ex. 8).  Among the property seized from those two homes were several items that have been referred to throughout this, and related litigation, as the "Exhibit 1 property." *See Young Again Prods., Inc. v. Acord*, 431 Fed. Appx. 308, 309 (5th Cir. 2011).  "Exhibit 1" details the following seized items:

(i)     "[P]hotographs owned by Kenneth Acord or Sean Ortega,[3] including photographs or inscriptions of family members of the Acord and/or Ortega family(s)";

(ii)    "[P]aintings owned by Kenneth Acord or Sean Ortega, including 2 oil portraits of members of the Acord and/or Ortega family ancestors";

(iii)   "Airplane and other miscellaneous toy models owned by Kenneth Acord and/or Sean Ortega";

(iv)    "Miscellaneous military memorabilia owned by Kenneth Acord and/or Sean Ortega";

(v)     "Sean Ortega's uniform collection";

---

[3] Sean Ortega is John and Kenneth Acord's half brother.  (Motion at 11 & Ex. 17).

(vi)     "The pill making machines located in Forth Worth, Texas and leased by Natural Labs (see the attached "description of Leased Pill Making Machine")"; and

(vii)    "The Croix de Guerre earned by Marcella Ortega's father in World War I."

*See id*.  Plaintiffs contest the seizure of all of their property, but emphasize that other courts have held that they have a justiciable interest in the Exhibit 1 property, in particular.  (*See* Response at 1-4).

*The Second Seizure*

On September 24, 2009, YAP requested permission from the court to levy execution on the following:  (i) all assets of a business called "Newtrients21"; (ii) real property located at 9022 Deer Lodge Road in Magnolia, Texas; and (iii) "all contents within said property owned by the judgment debtors."  *Young Again Prods., Inc*., Civil No. H-09-mc-00282, at Docket Entry #22.  On November 25, 2009, following an evidentiary hearing, this court granted that request.  *See id*. at Docket Entry #76.  "Newtrients21" is a company that, in other litigation, has been found to be owned by John Acord or Marcella Ortega, or to have been fraudulently transferred by Marcella Ortega to other family members.  (Motion at 7); *see Acord v. Saenz*, Civil Action No. H-09-2587, 2009 WL 2870009, at *1-13 (S.D. Tex. 2009) (Atlas, J.).  The Deer Lodge Road residence first belonged to Marcella Ortega, but was later adjudged to have been fraudulently transferred to Kenneth Acord to avoid satisfying the Maryland court judgment.  (*See* Motion at 11 & Ex. 13).  The second seizure, which occurred in December 2009, included the assets of Newtrients21, and the deed to the 9022 Deer Lodge Road property.  (*Id*. at 1, 6, 11).

Following the December 2009 seizure, John Acord, Marcella Ortega, and Kenneth Acord filed an appeal with the Fifth Circuit to challenge it, and the first seizure of property from the Cattle

Drive residences. (*Id*. at 13 & Ex. 12). On February 19, 2010, Kenneth Acord's appeal was dismissed for want of prosecution. (*Id*. at Ex. 14). YAP then filed a motion to dismiss the appeals by John Acord and Marcella Ortega on the following grounds:

> (i)    "Acord and Ortega lacked standing because they had disclaimed all interest in the subject matter of the appeal"; and

> (ii)    "because the appeal was taken from a series of non-final orders, this court lacked jurisdiction to consider the matter."

*Young Again Prods., Inc.*, 431 Fed. Appx. at 309. On June 28, 2011, the Fifth Circuit granted YAP's motion, and dismissed the appeals for lack of standing and want of jurisdiction. *See id*. at 312-13. In its decision, the Fifth Circuit recognized that, as part of an agreement to dispose of a bankruptcy case, John Acord and Marcella Ortega had stipulated to the following:

> Any and all personal property seized by Young Again Products, Inc. (the "Supplement Spot Assets") in connection with Civil Action No. 09–MC–0282, styled Young Again Products, Inc. v. John Acord, et al., pending in the United States District Court for the Southern District of Texas ... constitutes property of the Supplement Spot, LLC bankruptcy estate and/or was acquired with proceeds of property fraudulently transferred from the Supplement Spot, LLC bankruptcy estate.

*Id*. at 310. The court also noted that John Acord and Marcella Ortega had "disclaim[ed] any interest in the Supplement Spot Assets." *Id*. at 310-11. The Fifth Circuit concluded that, as a result, the challenges by John Acord and Marcella Ortega to the seizure of most of "the personal property seized by Young Again in its efforts to execute the district court's writs and orders" were moot. *Id*. On the other hand, the appellate court determined that John Acord and Marcella Ortega had shown a justiciable interest in the "Exhibit 1" property. *See id*. The court held, however, that it could not consider the lawfulness of the seizure of the property listed in Exhibit 1, "because the appeal was taken from a non-final order." *Id*. Finally, with regard to the seizure of the real property on Deer Lodge Road, the Fifth Circuit stated the following:

we note that only one parcel of land is at issue in this case—the real estate located at 9022 Deer Lodge Road, Magnolia, Texas. As the Judgment Debtors' counsel explained to the district court in a motions hearing in November 2009, this property was in foreclosure and Acord and Ortega no longer had any interest to protect in the property. The record on appeal supports this representation and includes the mortgagee's notice of foreclosure and sale on the real property located at 9022 Deer Lodge Road. Because Acord and Ortega are without any interest in the only real property at issue in this appeal, they have no rights in real property that an order of this court could serve to vindicate.

*Id.* at 311-12.

*The Third Seizure*

The third seizure occurred on October 27, 2010, when the Marshals levied execution on "personal property from John Acord's storage unit located at 1488 Storage [Unit 20, 7427 FM 1488] in Magnolia, Texas." *See Young Again Prods., Inc.*, Civil No. H-09-mc-00282, at Docket Entries #108, #109.

On August 31, 2011, Plaintiffs filed an action against the named Defendants in state court.[4] (Notice of Removal, Docket Entry #1, at Ex. 1). On October 7, 2011, Defendants removed the case on the basis of this court's diversity jurisdiction. (*Id.*). In their original petition, Plaintiffs brought claims against Defendants for conversion, abuse of process, wrongful execution, "trespass and trespass against chattels," fraud and misrepresentation, breach of privacy, tortious interference with contract, "denial of due process and access to the courts," civil theft, and replevin. (Complaint at 34-45).

---

[4] Plaintiffs claim that they filed their action in state court on August 29, 2011. (Response at 1; Response Evidence at 1-2 & Ex. A). The uncontroverted evidence shows that, on August 29, 2011, Plaintiffs sent their petition to the court by certified mail, and that the court received and marked it as filed on August 31, 2011. (*Id.*). For matters of Texas law, including the application of a statute of limitations, the petition is deemed to have been filed on August 29, 2011, the date it was placed in the mail. *See* Tex. R. Civ. P. 5, 22; *Milam v. Miller*, 891 S.W.2d 1, 2 (Tex. App.—Amarillo 1994, writ ref'd). It should be emphasized, however, that if an issue arises that concerns a federal limitations period or a federal procedural deadline, such as the one-year removal deadline set forth in 28 U.S.C. § 1446(c)(1), the petition may be treated as having been filed on August 31, 2011, when the state court received it. *See Robinson v. General Motors Corp.*, 601 F. Supp. 2d 833, 833-37 (N.D. Tex. 2008).

In their motion for partial summary judgment, filed on May 29, 2012, Defendants make a

number of arguments.  First, they contend that,

> [b]ecause the parties have already litigated (and this Court has already considered and decided) YAP's right to levy execution on the business assets and the real property at 9022 Deer Lodge Road, Plaintiffs are collaterally estopped from re-litigating the issues arising from the second seizure.

(Motion at 1).  Defendants also argue that,

> when Plaintiffs entered an Agreed Judgment with the Chapter 11 Trustee in the U.S. Bankruptcy Court in February, 2010 they conceded any interests they may have had in the Newtrients21 business assets, the real property at 9022 Deer Lodge, and the property seized at 1919 and 1935 Cattle Drive (with the possible exception of property on Exhibit 1 to the Agreed Judgment) and, as such, now lack standing to pursue damage claims for any of these assets.

(*Id*. at 1-2).  Defendants next contend that,

> [e]ven if Plaintiffs maintain a justiciable interest in the property listed on Exhibit 1 to the Agreed Judgment, they are now time barred from pursuing any action (with the sole exception of their claim for fraud and misrepresentation) relating to the property seized at 1919 and 1935 Cattle Drive (including the seized property listed on Exhibit 1 to the Agreed Judgment).

(*Id*. at 2).  And, finally, Defendants argue that:

> [Plaintiffs] cannot, as a matter of law, establish the elements necessary to make their claims of conversion, trespass to chattels, fraud and misrepresentation, civil theft, replevin, due process, tortuous interference, breach of privacy and abuse of process claims.

(*Id*.).  Defendants conclude their argument with the following representation:

> Accordingly, the only claims that potentially survive are those arising from YAP's seizure of John Acord's storage unit located at 1488 Storage....  Given the limited value of the contents (especially when considering costs of sale), YAP remains willing to release it back to John Acord with the assistance of the Court.

(*Id*.)

Having reviewed the pleadings, the evidence, and the applicable law, the court is persuaded that Defendants' motion for partial summary judgment should be granted.

**Standard of Review**

Summary judgment is appropriate when "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law.'" *Pustejovsky v. Pliva, Inc*., 623 F.3d 271, 275-76 (5th Cir. 2010) (quoting FED. R. CIV. P. 56(c); citing *Breaux v. Halliburton Energy Servs*., 562 F.3d 358, 364 (5th Cir. 2009)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving parties, there is no genuine issue for trial.'" *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). Under Rule 56, the moving parties "bear[] the initial burden of 'informing the district court of the basis for [their] motion, and identifying those portions of [the record] which [they] believe[] demonstrate the absence of a genuine issue of material fact.'" *Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The parties moving for summary judgment "'must demonstrate the absence of a genuine issue of material fact,' but 'need not negate the elements of the non-movant[s'] case.'" *Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)); *see Wallace v. Texas Tech Univ*., 80 F.3d 1042, 1047 (5th Cir. 1996). If the moving parties fail to meet their initial burden, its motion for summary judgment must be denied, regardless of the non-movants' response. *See Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001); *Little*, 37 F.3d at1075.

When the moving parties have met their Rule 56 burden, the non-moving parties cannot merely rest on the allegations in their pleadings. *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349-50 (5th Cir. 2005); *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc*., 66 F.3d 89, 92 (5th Cir. 1995). Rather, they are required to "'go beyond the pleadings'" and produce probative evidence to show "'that there is a genuine issue for trial.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075; citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87); *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005); *Taita Chem. Co*., 246 F.3d at 385. If they do so, their evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Hillman*, 697 F.3d at 302; *Taita Chem. Co*., 246 F.3d at 385. However, if the non-movants fail to respond appropriately, or if they fail to respond at all, summary judgment is not awarded to the moving parties simply by default. *See Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006); *Hetzel v. Bethlehem Steel Corp*., 50 F.3d 360, 362 n.3 (5th Cir. 1995); *Hibernia Nat'l Bank v. Administracion Cent. Soc. Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *John v. State of La*., 757 F.2d 698, 708 (5th Cir. 1985). Instead, as always, summary judgment is appropriate only if the moving parties have demonstrated the absence of a genuine issue of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 164 (5th Cir. 2006); *Hetzel*, 50 F.3d at 362 n.3 (quoting *Hibernia Nat'l Bank*, 776 F.2d at 1279).

**Discussion**

In their motion for partial summary judgment, Defendants make a number of arguments in favor of dismissing most of Plaintiffs' claims.  For the sake of simplicity, those arguments will be addressed separately, in the order in which they were raised.

*Collateral Estoppel*

Defendants begin by claiming that the doctrine of collateral estoppel precludes John Acord, Marcella Ortega, and Kenneth Acord from relitigating the "first seizure" and "second seizure." (Motion at 1, 9-10).  Those seizures included personal property recovered from 1919 and 1935 Cattle Drive; "the business assets of Newtrients21"; and the real property located at 9022 Deer Lodge Road.  (*See id*.).  Defendants insist that the lawfulness of those seizures has been litigated previously, and they are not subject to a further challenge.  (*Id*.).

"According to the doctrine of collateral estoppel, or issue preclusion, 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).  The doctrine applies to "'matters distinctly put in issue, litigated, and determined in the former action.'"  *Next Level Commc'ns LP v. DSC Commc'ns Corp*., 179 F.3d 244, 250 (5th Cir. 1999) (quoting *Brister v. A.W.I., Inc*., 946 F.2d 350, 354 (5th Cir. 1991)); *accord United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979)).  The

Fifth Circuit has recognized three elements that must be present before the application of collateral estoppel is appropriate:[5]

> (i)  "the issue at stake must be identical to the one involved in the prior action";
>
> (ii)  "the issue must have been actually litigated in the prior action"; and
>
> (iii)  "the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.

*Next Level Commc'ns LP*, 179 F.3d at 250 (citing *RecoverEdge L.P.*, 44 F.3d at 1290).  The "actual claims and the subject matter of each suit may differ," however, and "complete identity of the parties" is not necessarily required.  *Id*. (citing *RecoverEdge L.P.*, 44 F.3d at 1290; quoting *Meza v. General Battery Corp.*, 908 F.2d 1262, 1273 (5th Cir. 1990)); *see Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989).

In this instance, two of the three seizures challenged in this lawsuit are identical to those addressed by the court in *Young Again Prods., Inc. v. Acord*, Civil No. H-09-mc-00282.  Both cases involve YAP's right to seize property from the Cattle Drive addresses, the business assets of Newtrients 21, and the real property located at 9022 Deer Lodge Road to satisfy, in part, the nearly $4 million judgment that spawned the current litigation.  (*See* Motion at 10-11).  *See Young Again Prods., Inc*., Civil No. H-09-mc-00282, at Docket Entry #22.  Clearly, then, the first required element for the application of collateral estoppel has been met.  *See Next Level Commc'ns LP*, 179 F.3d at 250.

On the other hand, it is not clear that the lawfulness of the seizures was fully litigated in the earlier action, so as to give rise to the bar of collateral estoppel.  (Response at 13-16).  Defendants

---

[5] Federal law, not state law, determines the preclusive effect of a federal judgment.  *See Next Level Commc'ns LP*, 179 F.3d at 250 (citing *RecoverEdge L.P*., 44 F.3d at 1290 & n.11).

correctly point out that their right to seize property from the Cattle Drive addresses, the assets of Newtrients21, and the real property at 9022 Deer Lodge Road was addressed in that action, and that John Acord and Marcella Ortega were given a meaningful opportunity to respond. *See Young Again Prods., Inc.*, Civil No. H-09-mc-00282, at Docket Entries #22-24, #64-68, #73-74, #76. In fact, with regard to Newtrients21 and the Deer Lodge property, Judge Rosenthal conducted a complex two-day hearing, during which the parties presented oral arguments, and Marcella Ortega, Kenneth Acord, and Sean Ortega all testified. *See id.* at Docket Entries #73-74. At the conclusion of the hearing, the court found that the assets of Newtrients21, and the real property on Deer Lodge were subject to seizure by the judgment creditors. *See id.* at Docket Entry #74. Indeed, in her November 25, 2009 order, Judge Rosenthal allowed YAP to levy execution on both the business assets of Newtrients21 and the real property located at 9022 Deer Lodge Road. *See id.* at Docket Entry #76. (*See also* Response at 15; Motion at 2-3). And, as Defendants note, John Acord, Marcella Ortega, and Kenneth Acord believed that the order was ripe for appeal, because they challenged the first two seizures before the Fifth Circuit. *See Young Again Prods., Inc.*, 431 Fed. Appx. at 309.

But contrary to Defendants' contention, the Fifth Circuit did not treat the November 25, 2009 order as ripe for an appeal. *See id.* at 309-11. Instead, the appellate court found that many of the challenges raised on appeal were moot, because John Acord and Marcella Ortega had effectively disclaimed their interest in the assets of Newtrients21 and the real property at 9022 Deer Lodge Road. *See id.* at 310-12. The Fifth Circuit also determined that, to the extent that any of the challenges remained "justiciable," it lacked jurisdiction to consider them, "because the appeal was taken from a non-final order." *Id*. The court then emphasized that "'the usual writs and orders to aid in execution to collect a final money judgment are not, in general, appealable orders.'" *Id*.

13

(quoting *Schultz v. Fifth Jud. Dist. Ct. of App. at Dallas*, 810 S.W.2d 738, 740 (Tex. 1991),

*abrogated on other grounds by In re Sheshtawy*, 154 S.W.3d 114 (Tex. 2004)); *see In re Corrugated*

*Container Antitrust Litig.*, 694 F.2d 1041, 1042-43 (5th Cir. 1983).

Given the record in this case, Defendants have not shown that Plaintiffs' challenge to the first

two seizures was "actually litigated" in the earlier case, as required for the application of collateral

estoppel. *See RecoverEdge L.P.*, 44 F.3d at 1290. As a result, collateral estoppel does not bar

Plaintiffs' claims, and summary judgment is not appropriate for that reason.

*Standing*

Defendants next argue that, even if Plaintiffs' claims are not barred by the doctrine of

collateral estoppel, they "lack standing to bring any damage claims arising from YAP's seizure of

the business assets of Newtrients21, the personal property at 1919 and 1935 Cattle Drive, and the

real property located at 9022 Deer Lodge Road." (Motion at 12). In their Motion, Defendants point

out that, on February 11, 2010, John Acord, Marcella Ortega, and Kenneth Acord entered into an

agreed judgment in bankruptcy court. (*Id.* at Ex. 13). That judgment incorporated the following

findings by the bankruptcy judge:

> [T]his Court specifically holds, that any and all personal property seized by Young
> Again Products, Inc. (the "Supplement Spot Assets") in connection with Civil Action
> No. 09-MC-0282, styled Young Again Products, Inc. v. John Acord, et al., pending
> in the United States District Court for the Southern District of Texas, Houston
> Division (the "YAP Litigation") constitutes property of the Supplement Spot, LLC
> bankruptcy estate and/or was acquired with proceeds of property fraudulently
> transferred from the Supplement Spot, LLC bankruptcy estate.[6]

---

[6] At the relevant time, the "property" at issue did not include the contents of the storage unit that belonged to
John Acord. (*See* Motion at 12-13).

(*Id*.).  Plaintiffs agreed with the entry of the judgment.  (*See id*.).  Further, in considering the appeal

of Judge Rosenthal's order, the Fifth Circuit found that John Acord and Marcella Ortega had

abandoned their claim to that property by "disclaim[ing] any interest in the Supplement Spot

Assets."  *Young Again Prods., Inc*., 431 Fed. Appx. at 310-11.  The Fifth Circuit stated, expressly,

that, as a result of the Agreed Judgment, which was entered in the United States Bankruptcy Court,

Acord and Ortega conceded their lack of interest in "most all of the property rights that had satisfied

Article III's actual controversy requirement."  *Id*.  Indeed, the Fifth Circuit observed that, "[w]ith

one exception, the personal property at issue in this appeal involves Supplement Spot Assets

entirely."  *Id*.  The appellate court concluded that, "[w]ith the exception of the personal property

described in the Agreed Judgment's Exhibit 1, we can no longer grant Acord and Ortega meaningful

relief as to their claims:

> As the Judgment Debtors' counsel explained to the district court in a motions hearing
> in November 2009, this property was in foreclosure and Acord and Ortega no longer
> had any interest to protect in the property.  The record on appeal supports this
> representation and includes the mortgagee's notice of foreclosure and sale on the real
> property located at 9022 Deer Lodge Road.  Because Acord and Ortega are without
> any interest in the only real property at issue in this appeal, they have no rights in
> real property that an order of this court could serve to vindicate.

*Id*.  It appears, then, that the dispute related to the assets of Newtrients21, the personal property

seized at 1919 and 1935 Cattle Drive, and the real property located at 9022 Deer Lodge Road" is

settled.

Even so, Plaintiffs claim that the agreed judgment is void, because the judge who entered it,

The Honorable Jeff Bohm, is not an Article III judge.  (Response at 16-17).  In support of this claim,

they point out that the United States Supreme Court has held that a party may insist that certain

matters in bankruptcy proceedings be resolved by an Article III judge, rather than a bankruptcy

judge.  In making this argument, Plaintiffs rely on *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594, 2614 (2011).  In *Stern*, however, the Court emphasized that parties are not required to demand an Article III judge.  *See* 131 S. Ct. at 2614; *see also Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848-49 (1986) (recognizing that, "as a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver").  In this case, Plaintiffs approved the "agreed judgment" before Judge Bohm entered it.  (*See* Motion at Ex. 13).  Plaintiffs do not argue that they were coerced, or that they demanded an Article III judge, and were denied that right.  Instead, it appears that Plaintiffs did not avail themselves of their right to an Article III judge. Because they waived their right, the decision in *Stern* does not call into question the validity of the agreed judgment.  As a result, Plaintiffs cannot avoid the impact of that agreed judgment, which renders moot most of the challenges they have raised before this court.

On this record, Plaintiffs lack standing to recover damages relating to the seizure of the real property at 9022 Deer Lodge Road, and, as a result, Defendants are entitled to summary judgment on this claim.

### *Statute of Limitations*

Defendants argue that Plaintiffs' claims for damages arising from the seizures of the personal property seized from 1919 and 1935 Cattle Drive are barred by a two-year statute of limitations. (Motion at 14-16).  The federal courts look to state law for the statutory limitations periods on personal injury cases.  *See Owens v. Okure*, 488 U.S. 235, 237 (1989). In Texas, the applicable limitations period is two years.  *See* TEX. CIV. PRAC. & REM. CODE Ann. § 16.003(a) (providing that "a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible

16

entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues"); *Johnson v. Davenport*, 2000 WL 341255, at *3 (N.D. Tex. 2000) (involving a claim for abuse of process); *Kubosh v. City of Houston*, 96 S.W.3d 606, 608-10 (Tex . App.—Houston [1st Dist.] 2002, pet. denied) (conversion, taking, and detaining of personal property); *Mellon Serv. Co. v. Touche Ross & Co*., 17 S.W.3d 432, 435 n.1 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (tortious interference with contract); *Matlock v. McCormick*, 948 S.W.2d 308, 311 (Tex. App.—San Antonio 1997, no pet.) (invasion of privacy).

Here, Plaintiffs' state law claims arise from the August 29, 2009, seizure of property located at 1919 and 1935 Cattle Drive by the United States Marshals.  (*See* Complaint at 2-26).  All parties agree that Plaintiffs had to file their lawsuit by August 29, 2011, to avoid the limitations bar.  (*See id*.).  Defendants are adamant that Plaintiffs missed the statute of limitations by two days because their original petition is file-stamped August 31, 2011.  (*See* Motion at 14-16).

Plaintiffs insist, however, that, despite the date on the file stamp, their petition was filed on August 29, 2011.  (Response at 1-5).  They have submitted affidavits and copies of correspondence to show that they sent the petition to the state court clerk, by certified mail, on August 29, 2011.  (*Id*.; Response Evidence at 1-2 & Ex. A).  Under Texas law, for purposes of a statute of limitations, a petition is deemed to have been filed on the date on which it was placed in the mail to the clerk of the appropriate court.  *See* TEX. R. CIV. P. 5, 22; *Milam v. Miller*, 891 S.W.2d 1, 2 (Tex. App.—Amarillo 1994, writ ref'd).  Here, the uncontroverted evidence is that Plaintiffs mailed the petition to the clerk for filing on August 29, 2011.  For that reason, Plaintiffs are deemed to have filed their lawsuit on August 29, 2011, within the two-year limitations period.  Clearly, Defendants are not entitled to summary judgment on the limitations issue.

17

*Conversion and Trespass to Chattels*

Defendants contend that they are entitled to summary judgment on Plaintiffs' claims for conversion and trespass to chattels. (Motion at 17-18). They argue that Plaintiffs no longer have any justiciable interest in "[any] of the property that YAP seized in connection with Case No. 09-MC-0282, with the possible exception of the personal property listed on Exhibit 1," because they disclaimed it as "the property of the Supplement Spot, LLC, Bankruptcy Estate." (*Id.* at 17-18 & Ex. 13). Defendants also state that, "as recognized by both this Court and the Fifth Circuit, 9022 Deer Lodge Road was placed in foreclosure by the bank, leaving the Plaintiffs with no rights or equity interests to protect." (*Id.* at 17-18 & Ex. 1, 10); *see Young Again Prods., Inc.*, 431 Fed. Appx. at 311-12. Accordingly, Defendants contend that, as a result, Plaintiffs have, in essence, forfeited any claims for conversion or trespass. (Motion at 17-18).

In Texas, "conversion" and "trespass to chattels" are "torts designed to protect against interferences with one's possessory interest in personalty." *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981). Conversion is the "'unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights.'" *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) (quoting *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)); *accord Estate of Melchior*, 365 S.W.3d at 800. To succeed on a claim for conversion, Plaintiffs have to prove each of the following elements:

(i)     Plaintiffs "legally possessed the property or w[ere] entitled to it";

(ii)    Defendants "wrongfully exercised dominion and control over the property, excluding the plaintiff[s]";

(iii)   Plaintiffs "demanded the property's return"; and

18

(iv)    Defendants "refused" to return the property.

*Arthur W. Tifford, PA*, 562 F.3d at 705 (citing *Small v. Small*, 216 S.W.3d 872, 877 (Tex. App.—Beaumont 2007, pet. denied)).

Trespass to chattels also implicates "the wrongful interference with the use or possession of another's property." *Jones v. Boswell*, 250 S.W.3d 140, 143 (Tex. App.—Eastland 2008, no pet.) (citing *Omnibus Int'l, Inc. v. AT&T, Inc.*, 111 S.W.3d 818, 826 (Tex. App.—Dallas 2003, pet. dism'd)). In short, such interference constitutes conversion "when defendant[s] must pay full value of property," and trespass to chattels "when [they] do[] not." *Armstrong v. Benavides*, 180 S.W.3d 359, 363 (Tex. App.—Dallas 2005, no pet.) (citing *Omnibus Int'l, Inc.*, 111 S.W.3d at 826).

Here, the court is persuaded that Plaintiffs have previously disclaimed their interest in most of the property that was seized.  (*See* Motion at 17-18 & Ex. 13).  As a result, they cannot claim to have been in lawful possession of the property, or to have been "entitled" to it, as required for claims of conversion and trespass.  *See Arthur W. Tifford, PA*, 562 F.3d at 705.  The possible exception to this finding, however, is the property listed in "Exhibit 1."  With regard to that property, the Fifth Circuit concluded that "the interest in these specific items of personal property remained vested in the Judgment Debtors [Marcella Ortega and John Acord]." *Id*. at 310-11.  However, Plaintiffs have not shown that the seizure of that property was "wrongful," as required to prevail on conversion or trespass claims.  Indeed, Defendants had no legal obligation to determine what property, if any, was protected under any statutory exemptions before seeking seizure to satisfy a judgment.  *See Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997) (noting that, under Texas law, "the party who claims or alleges that property is exempt has the burden of producing evidence to show facts establishing the applicability of the statutory exemption").

Plaintiffs cannot, as a matter of law, satisfy the elements of conversion or trespass to chattels with respect to any property seized either during the August 29, 2009 seizure by the United States Marshals at 1919 and 1935 Cattle Drive, or the subsequent seizure of the business assets of Newtrients21 or the real property located at 9022 Deer Lodge Road, pursuant to the November 25, 2009 Order issued by this court.  *See Jones*, 250 S.W.3d at 143 (citing *Omnibus Int'l, Inc.*, 111 S.W.3d at 826); *Arthur W. Tifford, PA*, 562 F.3d at 705 (citing *Small*, 216 S.W.3d at 877).  As a consequence, summary judgment is appropriate on Plaintiffs' claims for conversion and trespass to chattel.

### *Fraud and Misrepresentation*

Defendants contend, as well, that they are entitled to summary judgment on the fraud and misrepresentation claims, because Plaintiffs "cannot establish the requisite element of reliance." (Motion at 19-21).  Under Texas law, to recover for fraud, "a plaintiff must show he was injured because of his reliance on a misrepresentation."  *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 274 (5th Cir. 2012) (citing *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994)). To prevail on those intentional tort claims, Plaintiffs must prove the following elements:

(i)     "a material representation was made";

(ii)    "the representation was false";

(iii)   "when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion";

(iv)    "the speaker made the representation with the intent that the other party should act upon it";

(v)     the party acted in reliance on the representation"; and

(vi)    "the party thereby suffered injury.

20

*Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)); *see Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). "These elements are applicable to claims of both fraud in the inducement and intentional misrepresentation." *Lane*, 529 F.3d at 564 (citing *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001); *RenCare, Ltd. v. United Med. Res., Inc.*, 180 S.W.3d 160, 166 (Tex. App.—San Antonio 2005, no pet.)).

In this case, John Acord, Marcella Ortega, and Kenneth Acord do not contend that Defendants made a representation upon which they relied to their detriment. Instead, they argue that Defendants represented to Plaintiffs' attorneys, and to the United States Marshals, that the property was subject to seizure. To the extent that Plaintiffs are able to craft a claim based on such a "misrepresentation," however, it is undermined by their claim that, during the seizures, they confronted Defendants and the Marshals and voiced their objections. (*See* Response at 19-20; Motion at 19-21). Clearly, they would not have objected if they believed that the seizures were lawful.

Further, even if Defendants' attorney made false representations to Plaintiffs, they cannot show any actionable reliance on those misrepresentations. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999). Under Texas law, it is well settled that a party cannot justifiably rely on statements by an opposing attorney that are made in an adversarial setting. *See id.*; *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 635 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Here, then, Plaintiffs have not raised a genuine issue of material fact on their allegations of fraud and misrepresentation. *See FinServ Cas. Corp. v.*

21

*Settlement Funding, LLC*, 724 F. Supp. 2d 662, 675-76 (S.D. Tex. 2010) (Lake, J.) (holding that

"[i]ndeed, given the hostile nature of the interactions described in [Plaintiff]'s Complaint, it is quite

clear that [Plaintiff] did not rely on any representations made by [Defendant]."). For that reason,

Plaintiffs cannot succeed on their claim for fraud and misrepresentation.

In response to the summary judgment motion, however, Plaintiffs insist that "Defendants

misconstrue [their] fraud claim." (Response at 19). They frame these claims as "fraud on the

court":

> Plaintiffs' claim for fraud against the Defendants is based on fraud on Court--
> Defendants' misrepresentation to court personnel (Marshals)--that property
> belonging to a third party/non-judgment debtor Kenneth Acord and/or that was
> exempt should be taken and carried off.

(Response at 19). They also cite a case from the Tenth Circuit in support of their argument that they

need not prove reliance to prevail on a claim for fraud and misrepresentation in that context. (*Id.*).

In the Tenth Circuit case, the court, in a footnote, observed that, indeed, "reliance" is not a necessary

element of a claim for "fraud on the court":

> The type of fraud necessary to obtain relief from a fraudulently obtained judgment,
> filed either as a post-judgment motion in the original action to set aside the judgment
> or as an independent action for damages incurred because of the fraud that led to the
> judgment, is considerably narrower than common law fraud.

*Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 n.6 (10th Cir. 1995).

In this litigation, however, as Defendants point out, "Plaintiffs have not alleged a cause of

action for fraud on the court." (Reply at 11). The court agrees that it is not clear that Plaintiffs, in

fact, attempted to make such a claim. (*See* Complaint at 18-20). More importantly, a successful

claim for "fraud on the court" can succeed only on proof of "the most egregious misconduct." *See*

*First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554,1573-74 (5th Cir. 1996) (giving examples of

22

such conduct, including "bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated"); *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 668 (5th Cir. 1981) (emphasizing that such a claim requires an allegation of a scheme "by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving 'far more than an injury to a single litigant'"). To make a valid claim for fraud on the court, a plaintiff must show evidence of "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Boulmay v. Rampart 920, Inc.*, 24 Fed. Appx. 889, 2005 WL 648290, at *1 (5th Cir. 2005). Plaintiffs here have not alleged or submitted any proof of conduct that is sufficiently "egregious" to sustain a claim for fraud on the court. *See Lustig*, 96 F.3d at 1573-74. As a result, Defendants are entitled to summary judgment on a claim for fraud on the court, as well.

*Civil Theft*

Defendants also seek summary judgment on Plaintiffs' claim under the Texas Theft Liability Act. (Motion at 21). Under the Theft Liability Act, "[a] person who commits theft is liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a); *see Ashburn v. Caviness*, 298 S.W.3d 401, 403 (Tex. App.—Amarillo 2009, no pet.); *Moorehouse v. Chase Manhattan Bank*, 76 S.W.3d 608, 614 (Tex. App.—San Antonio 2002, no pet.). "Theft" is defined under the Act as "unlawfully appropriating property or unlawfully obtaining services described by [certain sections of the] Penal Code." TEX. CIV. PRAC. & REM. CODE ANN. § 134.002(2). Under the relevant section of the penal code, "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03. Under the statute, "appropriate" means "to bring about a transfer or purported transfer of title to or other

23

non-possessory interest in property, whether to the actor [or] another or to acquire or otherwise exercise control over property other than real property." *Id.* § 31.01(4). The Penal Code also provides that the appropriation of property is unlawful if "it is without the owner's effective consent." *Id.* § 31.03. It has long been settled that "the intent to deprive contemplated under § 31.03(a) must exist at the time of the taking or exchange." *First State Bank v. Morse*, 227 S.W.3d 820, 826 (Tex. App.—Amarillo 2007, no pet.) (citing *Reed v. State*, 717 S.W.2d 643, 645 (Tex. App.—Amarillo 1986, no pet.)).

In this case, there is no evidence that, at the time of the seizures, Defendants had the intent to unlawfully deprive Plaintiffs of their property. (Motion at 21; Reply at 13-14). Instead, the various writs, orders and judgments from the federal courts, both here and in Maryland, are clear evidence that the seizures were lawfully executed by federal officers, and on orders of the courts, following extensive litigation. (Motion at 21-22 & Ex. 1-2, 13; Response at 13). It is likewise clear that Defendants sought those seizures only after Plaintiffs failed to post the required *supersedeas* bond after the monetary judgment was entered against them. (*See id.*). Plaintiffs have presented no evidence that shows an intent on Defendants' part to unlawfully deprive them of their property. As a result, summary judgment on Plaintiffs' theft claim is warranted, as well.

*Replevin*

Defendants argue that they are entitled to summary judgment on Plaintiffs' claim for replevin. (Motion at 22; see Reply at 14-15). "Replevin is an 'action for the repossession of personal property wrongfully taken or detained by the defendant, whereby the plaintiff gives security for and holds the property until the court decides who owns it.'" *Simmonds v. TDCJ*, 2010 WL 654498, at *8 (Tex. App.--Waco 2010, no pet.) (quoting BLACK'S LAW DICTIONARY 1302 (7th

24

ed.1999); *see Seureau v. Mudd*, 515 S.W.2d 746 (Tex. App.--Houston [14th Dist.] 1974, writ ref'd n.r.e.).

Importantly, "[r]eplevin requires the Plaintiffs to give security for the property whose return they seek, and such a cause of action is not sustainable in the absence of security." *Simmonds*, 2010 WL 654498, at *8. In this case, however, it is undisputed that Plaintiffs did not provide any security in lieu of the seizures. (Motion at 22). In their response, Plaintiffs claim that they should be allowed to proceed on their claim for replevin, because they "still could" provide security for the property they seek. (Response at 21). However, on this record, there is no reason to believe that Plaintiffs intend to provide security. In fact, they have taken no steps to do so since making the argument that they "still could" provide security in the future. In this instance, then, summary judgment is appropriate on Plaintiffs' claim for replevin.

### Due Process and Access to the Courts

Defendants argue that summary judgment is warranted on Plaintiffs' claims for denial of due process and access to the courts. (Motion at 22-23). In their Complaint, Plaintiffs assert a constitutional claim for $2 million in damages for purported violations of their state constitutional rights. (Complaint at 22-23). Specifically, they allege that "Defendants' actions violated the due process and access to the Court's [sic] provisions of the Texas Constitution." (*Id*.; *see* Motion at 22). The Texas Constitution provides, as follows:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

TEX. CONST. art. I, § 19. The Texas Constitution also guarantees "open courts," or "access to courts":

> All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

*Id.* art. I, § 13.  Plaintiffs complain that they were deprived of these protections, and they seek monetary damages as a remedy.  (Complaint at 22-23).

In their Complaint, Plaintiffs allege that Defendants seized their property without due process of law, and that their unlawful use of the writs of execution deprived John Acord, Marcella Ortega, and Kenneth Acord of their ability to use the courts to protect their rights.  (*Id.*).  The Texas Supreme Court, however, has made it clear that there is no private cause of action for damages under the Texas Constitution.  *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148-49 (Tex. 1995).  Indeed, Texas courts have explicitly held, as follows:

> The due process provisions of the Texas Constitution do not imply a cause of action for damages. . . . A due process claim in which the plaintiff seeks monetary damages does not invoke the trial courts jurisdiction.

*Smith v. City of League City*, 338 S.W.3d 114, 127 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see Bouillion*, 896 S.W.2d at 149; *Old S. Amusements, Inc. v. City of San Antonio*, 2010 WL 2772444, at *3 (Tex. App.—San Antonio 2010, no pet.); *University of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 469 (Tex. App.—Fort Worth 1997, writ denied).  The Texas courts have consistently held that the state Constitution permits claims for equitable relief only.  *See Bouillion*, 896 S.W.2d at 149.

Because Plaintiffs here are seeking monetary relief, even if they had a constitutional claim, they could not recover money damages.  *See id.* at 148-49.  For that reason, Defendants are entitled to summary judgment on Plaintiffs' claims under the Texas Constitution.

26

*Tortious Interference with Contract*

In their motion for partial summary judgment, Defendants also argue that they are entitled to summary judgment on Plaintiffs' claim for tortious interference with a contract. (Motion at 23-24). In their Complaint, Plaintiffs allege that Defendants falsely informed Kenneth Acord's mortgage company that "Defendants were the owner of the property [that was Kenneth's separate residence], and then refused to make any further payments on the mortgage," forcing the property into foreclosure. (Complaint at 21). They argue that Kenneth Acord remained liable on the mortgage, and "lost any chance he had to refinance the mortgage in question, to engage in short sale negotiations, to rent the property, or to make further accommodations or agreements with the mortgage company which would save his credit." (*Id*. at 21-22). Plaintiffs also allege that Defendants' conduct was knowing and intentional, cost them at least $125,000 in actual damages, and "destroyed [Kenneth Acord's] credit rating." (*Id*. at 22).

As a threshold matter, it is not clear which property Kenneth Acord was responsible for. In their Complaint, Plaintiffs aver that Kenneth Acord "occupied a separate apartment at 1919 Cattle Drive." (*Id*. at 6). They also state that, "several years before YAP's illegal raid and seizures," Kenneth Acord "resided there with Marcella Ortega, who is his mother, and John Acord, who is his brother." (*Id*.). On these facts, it does not appear that the "mortgage" that Kenneth Acord is complaining about was on his residential property. Instead, the mortgage at issue is, presumably, on the 9022 Deer Lodge Road property. (*Id*. at 11). Plaintiffs claim that "Kenneth Acord had acquired that property in an arms-length transaction from Marcella Ortega using profits he had made from the sale of a condominium her used to own in Long Beach, California." (*Id*.). This property, however, was previously adjudged to be properly subject to seizure, because it was fraudulently

27

transferred from Marcella Ortega to Kenneth Acord to avoid the judgment lien. (*See* Reply at 17 n.10; Motion at Ex. 10, 11; Response Evidence at 6). In fact, at the time Defendants informed the mortgage company of their interest in the property, the judgment lien was already in place. (Reply at 17 n.10). Texas courts are clear that the exercise of one's legal rights, or a good faith claim to a colorable legal right, establishes a defense to a cause of action for tortious interference with a contract. *See Richter v. Wagner Oil Co*., 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.). Here, then, Plaintiffs have not shown sufficient legal interest in the property at 9022 Deer Lodge Road upon which to base a claim for tortious interference with a contract.

Further, "[f]or a plaintiff to maintain a tortious interference claim, it must produce some evidence that the defendant knowingly induced one of the contracting parties to breach its obligations under a contract." *All American Tele., Inc. v. USLD Commc'ns, Inc*., 291 S.W.3d 518, 532 (Tex. App.—Fort Worth 2009, pet. denied); *see John Paul Mitchell Sys. v. Randalls Food Mkts., Inc*., 17 S.W.3d 721, 731 (Tex. App.— Austin 2000, pet. denied). Here, however, Plaintiffs do not allege that Defendants knowingly induced a breach of any agreement between Kenneth Acord and his mortgage company. And, even accepting Plaintiffs' assertion as true, none of the facts alleged impact Kenneth Acord's contractual responsibility to make timely mortgage payments.

As Plaintiffs have not identified any conduct that constitutes a breach of the mortgage agreement, Defendants are entitled to summary judgment on the claim for tortious interference with a contract.

*Privacy Claim*

Defendants also contend that they are entitled to summary judgment on Plaintiffs' claim for breach of privacy. (Motion at 24-25). Plaintiffs have alleged that Defendants committed a breach or invasion of privacy by the following conduct:

> rummaging through the Plaintiffs [sic] personal papers and records and by seizing and carrying off Plaintiffs [sic] personal papers and private effects.

(Complaint at 20-21). In Texas, a claim for invasion of privacy requires proof of the following elements:

(i)      "an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns," which

(ii)     "would be highly offensive to a reasonable person," and

(iii)    resulted in injury.

*Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); *see Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 387 (Tex. App.—Dallas 2009, no pet.); *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, no pet.). "When assessing the offensive nature of the invasion, courts must determine whether the intrusion is unjustified or unwarranted." *Webb,* 298 S.W.3d at 387. In this case, any "invasion of privacy" on the part of Defendants was "warranted," or "justified," because it was authorized by the courts. For that reason, Defendants' actions cannot be the basis for an invasion of privacy claim. *See Martorana v. Federal Nat. Mortg. Ass'n*, 2012 WL 124930, *8 (E.D. Mich. Jan. 17, 2012) (holding that a party cannot assert an invasion of privacy claim for an officer's entry into his home and removal of property pursuant to a writ of eviction). To succeed, then, Plaintiffs have to show that their privacy was "invaded" by other means. Here, however, Plaintiffs

29

offer no further support for their claim for invasion of privacy.  (*See* Reply at 18-19).  As a result, summary judgment on Plaintiffs' privacy claim is appropriate.

*Abuse of Process*

Finally, Defendants argue that they are entitled to summary judgment on Plaintiffs' claim for abuse of process.  (Motion at 19).  In their Complaint, Plaintiffs allege that Defendants abused the legal process by using a writ of execution to "breach the peace, forcibly enter private homes, place the occupants of private homes under arrest or detention . . . forcibly eject occupants . . . seize private papers . . . and seize . . . the property of third parties."  (Complaint at 14-16).  They claim that, as a result, they are entitled to an award of damages.  Under Texas law, "abuse of process" means "the malicious use or misapplication of process in order to accomplish an ulterior purpose." *Hunt v. Baldwin*, 68 S.W.3d 117, 129-30 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378 (Tex. App.—Texarkana 1989, no writ)).  To succeed on a claim for abuse of process, Plaintiffs must show the following:

(i)     that "the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process";

(ii)    that "the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process"; and

(iii)   that "damage to the plaintiff as a result of such illegal act.

*Id.* (citing *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex.App.—Houston [14th Dist.] 1994, writ denied)).  Further, "[i]t is critical that the process be improperly used *after* it has been issued."  *Id.* (citing *RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 133 (Tex.App.—Houston [14th Dist.] 1997, pet. denied)) (emphasis added).  "Texas law recognizes a cause of action for abuse of process where the original process, such as a writ, has been abused to

30

accomplish an end other than that which the writ was designed to accomplish." *Id*. (citing *Bossin*, 894 S.W.2d at 33; *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.)).   In other words, the facts must show that "the original issuance of a legal process is justified, but the process itself is subsequently used for a purpose for which it was not intended." *Id*. (citing *Martin*, 578 S.W.2d at 769).   "When the process is used for the purpose for which it is intended, even though accomplished by an ulterior motive, no abuse of process has occurred."   *Id*. (citing *Baubles & Beads*, 766 S.W.2d at 378); *accord Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet).

In this case, Defendants sought, and "used," the writs of execution in the manner and for the purposes for which those writs were intended, namely, to execute on the judgment they obtained against Plaintiffs.  *See Hunt*, 68 S.W.3d at 129-30; *see also Preston Gate, LP*, 248 S.W.3d at 897. As a matter of law, then, Plaintiffs have no valid claim for abuse of process, and summary judgment is appropriate on this issue.

In sum, Plaintiffs have not raised a genuine issue of material fact on any of the claims addressed in Defendants' motion for summary judgment.  For that reason, the court recommends that Defendants' motion for partial summary judgment be granted.

To the extent that Defendants have not moved for summary judgment on Plaintiffs' "wrongful execution, conversion and trespass claims arising from YAP's seizure of the contents of John Acord's storage unit," those claims remain for trial.  The court notes, however, that YAP has represented that it would be "willing to release back to John Acord with the Assistance of the Court" the contents of the storage unit.  (Motion at 20).

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendants' motion for partial summary judgment be **GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 7th day of February, 2013.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**

32